**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eric Nathaniel JOHNSON,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eric Nathaniel JOHNSON, a/k/a Little**
**Freak, Defendant–Appellant.**

**Nos. 88–7625, 88–7626**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1989.

James R. Willis, Cleveland, Ohio, for defendant-appellant.

Frank W. Donaldson, U.S. Atty., John C. Earnest, Jr., Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before JOHNSON, ANDERSON, and CLARK, Circuit Judges.

PER CURIAM:

Johnson was originally indicted for possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). (R.1A Tab 1). The magistrate denied Johnson's motion to suppress physical evidence seized and statements made in connection with his arrest on that charge. Thereafter, a multi-defendant eight count indictment issued, charging Johnson with conspiracy to possess with intent to distribute and distribution over five kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count 1);

two counts of distributing cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts 4 & 5); and possession of three kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 8). The district court granted the government's motion to consolidate, and all charges were tried together.

After a jury trial, Johnson was acquitted on Count 8 and convicted on the remaining counts. The court sentenced Johnson to 20 years on Count 1; 20 years on Count 4; to run consecutive to the Count 1 sentence; and 20 years on Count 5, to run concurrent with the Counts 1 and 4 sentences. It also sentenced Johnson to 10 years on the shotgun charge, and ordered the sentence to run concurrent with the drug sentences. Although two of the charged offenses occurred after November 1, 1987, the court sentenced Johnson on all counts "without regard to the Sentencing Reform Act of 1984 ... as if the offense[s] had been committed prior to November 1, 1987."

Johnson now appeals the judgment of the district court in both cases.[1] On appeal Johnson argues that certain evidence seized at his house and certain statements he made at the time of his arrest were fruits of an illegal detention. In addition, he argues that the evidence presented by the state at trial was insufficient to convict him on the conspiracy charge. Finally, Johnson challenges the sentences he received as violative of the Sentencing Reform Act, 18 U.S.C. § 3551, *et seq.* After reviewing Johnson's contentions we affirm his convictions; however, because the court failed to follow the dictates of the Sentencing Reform Act and the Sentencing Guidelines promulgated under the act, we vacate the sentences and remand the case to the district court for a new sentencing hearing.

## I. FACTS

At Johnson's trial Otha "O.T." Taylor testified that he met Eric Johnson at a blackjack game in Los Angeles sometime prior to the summer of 1986. At the time that they met, Taylor was engaged in trafficking cocaine between California and Bir-

---

1. On Johnson's motion, this court consolidated the appeals. *See* Order of May 16, 1989.

mingham, Alabama. Taylor testified that later that year Johnson contacted him in Birmingham and requested Taylor to provide him with two or three ounces of cocaine on a credit basis. Taylor also testified that over the next two months, he and Johnson repeated that transaction. In all cases, Johnson paid Taylor within one week of the purchase.

In early 1987, Taylor, along with his girlfriend Shewanna Reynolds, moved to Birmingham and rented an apartment in the same complex as Johnson. Taylor testified that at that time Johnson had increased his purchases to up to one kilogram of cocaine. Taylor was receiving up to five kilograms of cocaine a week which he stored in his apartment. The cocaine was purchased on credit. In addition to Taylor's testimony, the government introduced the testimony of Reynolds who recounted watching Taylor give Johnson a few ounces of cocaine after Johnson announced that he had a few deliveries to make. During that year Taylor testified that Johnson purchased ten to fifteen kilograms of cocaine.

In late summer of 1987, Birmingham police brought in Jesse Seroyer, the chief investigator for the Alabama Attorney General's Office to assist the department in its investigation of Taylor and Johnson. An informant then introduced Seroyer to Taylor and the defendant. At that time Seroyer heard Johnson say that his girlfriend had stolen $1,200 and two ounces of cocaine from him. At a later meeting Johnson confided in Seroyer he had "slowed down a bit" because he believed the FBI had him under surveillance. Seroyer next had contact with Johnson at his birthday party. At that time, Seroyer told Johnson that they should get together and talk about business.

Seroyer contacted Johnson on September 23, 1987. At that time Seroyer arranged to purchase two ounces of cocaine from Johnson. Later that evening the two met and concluded the transaction. On another occasion Johnson sold Seroyer three ounces of cocaine and allowed Seroyer purchase the third ounce on credit. At that time Seroyer discussed expanding his operations in south Alabama and asked for Johnson's assistance. That evening Seroyer telephoned Johnson to discuss arranging a larger purchase for his south Alabama operations. Johnson agreed to sell Seroyer one kilogram at a discounted price. The two also discussed splitting the profits from the eventual re-sale of the cocaine.

Seroyer arranged to meet with Johnson to pay him for the third ounce purchased on credit. However, when Seroyer arrived at the meeting place only Taylor was present. Taylor agreed to take the money to give to Johnson. After being told of the south Alabama expansion plans, Taylor agreed to join Johnson and Seroyer for an exploratory trip to view Seroyer's distribution system. Later that day Seroyer spoke with Johnson and told him that Taylor had his money. At that time Johnson again expressed interest in the south Alabama sale.

By late 1987 Johnson was purchasing up to five kilograms of cocaine from Taylor and had become his largest purchaser. On April 12, 1988 Taylor and Johnson evenly split a seven kilogram shipment. On that day Johnson was arrested after his automobile was stopped. Later that day Taylor and Reynolds were arrested for possession of one kilogram of cocaine. Prior to their arrest they were not aware of Seroyer's true identity.

## II.  DISCUSSION

### A.  Fourth Amendment Issues

Johnson first appeals the district court's refusal to suppress evidence obtained after Johnson's arrest. Specifically, Johnson objects to both his detention on the scene after the arrest and the use of drug sniffing dogs to search his automobile and its contents. Appellant's Brief at 19–20. Johnson argues that certain statements he made during this detention and drug odors found on the currency by the police dogs were illegally obtained and should have been suppressed. Johnson also argues that the evidence obtained from the search of his residence should have been suppressed since the statements obtained dur-

ing his detention served as the grounds for issuing the warrant to search his residence.

■ This appeal marks the first time Johnson has made this argument. In his motion to suppress and at the hearing on the motion, he argued that his initial detention constituted an illegal arrest and therefore all other evidence obtained subsequent to the detention constituted fruits of the illegal stop. This claim was denied by the magistrate and the evidence obtained from these searches was admitted at trial. For the purposes of this appeal, Johnson does not contest the legality of the stop. Therefore, all possible errors concerning these decisions are abandoned. *See Rogero v. Noone*, 704 F.2d 518, 520 n. 1 (11th Cir. 1983).

In addition, we will not consider the merits of the claim that Johnson now presents. We sit to review the proceedings in the district court rather than to serve as a *de novo* forum where the prior proceedings can be retried. Since "[i]t is not the practice of this court to consider issues on appeal not raised in the district court," *Allen v. Alabama*, 728 F.2d 1384, 1387 (11th Cir.1984), we decline to consider the merits of Johnson's Fourth Amendment claim.

### B. Sufficiency of the Evidence

Johnson also argues that the evidence before the jury was insufficient for the jury to conclude that he had taken part in the conspiracy. Specifically, Johnson alleges that the only evidence to link him with the conspiracy was based upon the testimony of Taylor, and was "presumptively unreliable" as a "confession of an accomplice." Appellant's Brief at 31. Johnson's contention is that the evidence shows that he and Taylor only stood together as a buyer and a seller rather than as members of a conspiracy. He places emphasis on the fact that the jury acquitted him on the only substantive count that involved Taylor. Johnson asserts that, since the jury rejected Taylor's evidence on this count, the testimony of Taylor regarding the conspiracy should also be rejected.

We review this claim by asking whether "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B) (en banc),[2] *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In conducting this review, we consider the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). After so reviewing the evidence, we find it adequate to support the jury's determination of guilt.

■ First, we note that the fact that the jury did not convict Johnson on the count alleging possession of cocaine with the intention to distribute is of little significance. As Justice Holmes has noted: "the most that can be said is that ... the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) (citing *Steckler v. United States*, 7 F.2d 59, 60 (2d Cir.1925)). Seemingly inconsistent verdicts can be explained in many ways including the jury's feelings of leniency. Our review is limited to whether the evidence is sufficient to support the guilty verdict.

■ Johnson is correct in arguing that the mere existence of a buyer-seller relationship is insufficient to prove that the defendant agreed to the conspiracy. *United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir.), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1984). Agreements to enter into conspiracies can be shown by inferences from the conduct of the participants. *United States v. Elledge*, 723 F.2d 864, 865 (11th Cir.1984). In addition, it need not be shown that the defendant knew all of the details of the alleged conspiracy as knowledge of the essential objective is sufficient to impose liability. *Id.* In the case of a purchaser of narcotics, we have held that agreement may be in-

---

2. In *Stein v. Reynolds Securities*, 667 F.2d 33, 34 (11th Cir.1982), this court adopted as binding precedent all of the decisions of Unit B of the former Fifth Circuit.

ferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser. *Bascaro,* 742 F.2d at 1359.

■ In this case there was ample testimony for the jury to reach the conclusion that Johnson had agreed to join the conspiracy. Taylor testified that every eight days he would bring Johnson half of the ten kilograms he brought to Alabama. The regularity of the purchase from Taylor refutes Johnson's claim that the evidence only showed that he was a purchaser. From this quantity of regularly purchased drugs, a jury could reasonably conclude that Johnson was aware that Taylor was involved in the possession and distribution of cocaine. His continued participation in such an enterprise provides sufficient evidence to infer agreement. In addition, Taylor's testimony concerning the credit arrangements he made with Johnson also shows Johnson's continuing role in the enterprise.

Finally, the testimony of Chief Inspector Seroyer provided confirmation of Taylor's testimony.[3] Seroyer testified that Johnson wanted to help Seroyer expand his operations in southern Alabama and that Taylor had told Seroyer of his approval of the expansion plans. This testimony is further evidence of the agreement between Johnson and Taylor. Seroyer's testimony that Taylor had accepted $1000 from him to repay Johnson for cocaine that Johnson had advanced to Seroyer on credit also supports the conclusion that Johnson and Taylor were acting together. The jury's guilty verdict on the conspiracy charges is supported by the evidence.

### C. The Applicability of the Sentencing Guidelines

Finally, Johnson attacks the sentence he received alleging that it violates the Sentencing Act of 1987, Pub.L. No. 100–182, 101 Stat. 1266. The Act applied the new

sentencing guidelines to all offenses committed after November 1, 1987. *See id.* at § 2. Until earlier this year, however, the guidelines were not used in Alabama District courts. In fact, the entire Northern District of Alabama had declared the guidelines unconstitutional. *United States v. Allen,* 685 F.Supp. 827 (N.D.Ala.1988) (en banc). On the authority of *Allen* the district court sentenced Johnson without regard to the sentencing guidelines for all of the offenses. In January of this year, however, the Supreme Court upheld the constitutionality of the sentencing guidelines. *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Because we determine that Johnson should have been sentenced under the sentencing guidelines for two of the charges against him, we remand this case to the district court for a new sentencing hearing.

■ First, Johnson argues that he should have been sentenced under the guidelines for the shotgun and conspiracy charges since both were committed after November 1, 1987. The government agrees with this conclusion. We therefore vacate these sentences and remand the case for a new sentencing hearing on count one of the May 2, 1988 indictment and count one of the June 30, 1988 indictment.

■ Second, Johnson argues that he should also be resentenced on the other counts since he was charged in a multicount indictment charging offenses committed both before and after November 1, 1987. Appellant's Brief at 36. Johnson argues this result is necessary in order for the sentences to be consistent with the grouping and multiple count rules of the guidelines. *Id.; see* U.S. Sentencing Commission Guidelines Manual, Ch. 3 Part D (1988) (grouping rules for multiple counts). The government responds that since the Act does not apply to offenses committed before November 1, 1987, the district court's sentence is not challengeable for failure to take into account the guidelines.

---

**3.** We do not mean to suggest that the jury did dismiss Taylor's testimony. We note that the government may base its case on the testimony of "an array of scoundrels, liars, and brigands." *United States v. Hewitt,* 663 F.2d 1381, 1385

(11th Cir.1981). The jury could have chosen not to believe Taylor; however, the inference we must draw from the verdict is that they did choose to believe Taylor's testimony.

We refuse to place any special significance on the government's decision to indict the defendant with a multi-count indictment for offenses occurring both before and after November 1, 1987. The absolute rule proffered by the defendant would be fraught with constitutional difficulties since it would require the court to use the sentencing guidelines for pre-November 1, 1987 offenses. *See Miller v. Florida*, 482 U.S. 423, 435, 107 S.Ct. 2446, 2454, 96 L.Ed.2d 351 (1987) (state law increasing penalties for offenses committed before effective date of new law invalid as *ex post facto* law). Thus, we reject the rule Johnson proffers. However, in *United States v. Burgess*, 858 F.2d 1512, 1514 (11th Cir. 1988), this court noted that it was permissible for the district court to take into account the guidelines in sentencing offenses committed before November 1, 1987.

The district court did not consider whether or not to exercise this discretion and apply the guidelines merely because it mistakenly believed that the guidelines were unconstitutional. In addition, the district court may have taken into account all of the offenses when it imposed the sentences for the pre-November 1, 1989 offenses. As we held in *Burgess*, however, the court was not mandated to consider the guidelines. Therefore, we decline to vacate the sentence on these counts.[4]

The judgement of the district court is AFFIRMED with respect to the verdict and with respect to the sentence on counts four and five of the May 1988 indictment and REVERSED with respect to the sentence on count one of the May 1988 indictment and count one of the June 1988 indictment. The case is REMANDED for a sentencing hearing on those counts consistent with this opinion.

---

[4]. Of course, the pre-guidelines version of Fed.R. Crim.P. 35(b) allows the district court to entertain a motion to reduce Johnson's sentence. The rule allows Johnson 120 days from the issuance of this court's mandate affirming the sentence to make such a motion. Thus, on remand the defendant may make an "old Rule 35(b)" motion requesting the district court to reconsider the sentence to take into account the guidelines' grouping rules.