USCA1 Opinion

 

 December 11, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-2223 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. GEORGE F. WOOD, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ Before Torruella and Selya, Circuit Judges, ______________ and Zobel,* District Judge. ______________ ____________________ Terrence D. Garmey with whom Karen B. Lovell and Smith & Elliot, ___________________ ________________ _______________ P.A. were on brief for appellant. ____ Margaret D. McGaughey, Assistant United States Attorney, with _______________________ whom Richard S. Cohen, United States Attorney, and Thimi R. Mina, _________________ ______________ Assistant United States Attorney, were on brief for appellee. ____________________ ____________________ _____________________ * Of the District of Massachusetts, sitting by designation. ZOBEL, District Judge. Appellant was an attorney in private ______________ practice in Sanford, Maine. In 1987, Philip Spang, Jr. ("Philip"), a client and close personal friend, approached him and asked if he would help obtain the forged signatures of Philip's sons, Timothy and Daniel, on deeds to certain real estate. Appellant initially refused but then he agreed and sought out the services of William Lessard, a private investigator in New Hampshire. Lessard promised to locate a forger, but after considering the legal consequences of such action he contacted the Federal Bureau of Investigation and agreed to cooperate by wearing recording equipment during his encounters with appellant. Appellant and Lessard communicated by telephone and in person to plan the forgeries. After many such conversations, appellant was arrested, charged with and, following a trial, convicted of two counts of wire fraud in violation of 18 U.S.C. 1343. He now asserts errors in the charge to the jury and in the admission of rebuttal testimony as well as the government's argument with respect thereto. We affirm. The underlying facts are substantially undisputed. Appellant never denied that he sought to obtain forged signatures on deeds. He claimed instead that he lacked the necessary fraudulent intent because of the unusual way in which Philip conducted his real estate dealings. Philip testified that in the 1940s and 1950s he invested significantly in real estate. Hoping to avoid creditors and inheritance taxes, Philip had the deeds prepared in the names of his children or siblings. These deeds, naming such child or sibling as owner in fee, were recorded. With respect to many of the transactions, Philip also arranged for the "donee" to sign a deed conveying the same real estate 2 to Philip. The latter would keep that deed at his home, until necessary, when he would simply record it and thus divest the "donee" of title. Appellant was familiar with Philip's unique real estate arrangements and had, in fact, drafted and/or recorded a number of the deeds. During 1986 Philip and his wife began to have marital problems, as a result of which his relationship with his sons Daniel and Timothy became strained. Thus, when, in 1987, Philip asked Timothy and Daniel to deed to him certain of the properties he had purchased and put in their names, neither would do so. Philip testified that he believed Timothy and Daniel had signed "return deeds" for these properties but that he could not find the documents. He ultimately told appellant that the deeds were missing and that he wanted the latter's assistance in obtaining the sons' forged signatures on duplicate deeds to replace the ones missing. Appellant testified that he believed he was only helping to replace valid deeds which had been lost or stolen,* and that, in any event, the forged deeds would be used only to convince the sons to sign new deeds conveying title to Philip so as to carry out Philip's original intent. ____________________ * Appellant also testified that Philip told him his children had cleaned out his office in the basement and had stolen deeds, money, coins, and his grandfather's gold watch. 3 Appellant asserts first that the trial court's failure to give his requested jury instructions 9, 10, 11 and 12 constitutes reversible error.** He argues that because the jury was not instructed as to the legal effect of the return deeds the jury could not fairly consider the theory of his defense; namely, that his good faith belief in the existence of the return deeds negated criminal ____________________ ** Defendant's Proposed Jury Instructions nine through twelve read as follows: ( 9 ) Mr. Wood has testified that he believed that Timothy and Daniel Spang had signed deeds re-conveying to their father, Philip, the property which Philip had deeded to them, and that he consequently believed Philip and not Timothy and Daniel owned the property. He has testified that he believed Timothy and Daniel could not be defrauded of property they did not own. If you find that the government has failed to disprove Mr. Wood's contention that he held this belief, then the government has failed to prove his intent to commit fraud and, accordingly, you must find him not guilty. ( 1 0 ) When a person signs a deed and delivers that deed to the person named on the deed as the new owner, the signer of the deed no longer owns the property. It is not necessary for the deed to be recorded in the Registry of Deeds for this transfer of ownership to occur. ( 1 1 ) If you find that George Wood believed that Timothy Spang and Daniel Spang signed deeds re-conveying to their father the property he had previously deeded to them, and that he therefore believed Timothy Spang and Daniel Spang did not own the property and could not be defrauded of it, then you must find that the government has failed to prove that Mr. Wood had an intent to defraud and, therefore, you must enter a verdict of not guilty. ( 1 2 ) If you find that George Wood believed that Timothy Spang and Daniel Spang signed deeds re-conveying to their father the property he had previously deeded to them, then you must find that the government has failed to prove that Mr. Wood had an intent to defraud and, therefore, you must enter a verdict of not guilty. 4 intent. 5 The Court's refusal to give requests 9, 11 and 12 requires little discussion. They are clearly argument and the Court correctly declined to give them. See United States v. Gonzalez, 933 F.2d 417, ___ __________________________ 446 n.19 (7th Cir. 1991). We review the failure to read proposed instruction 10 in light of the record as a whole, considering the charge as given. United States _____________ v. Nivica, 887 F.2d 1110, 1124 (1st Cir. 1989), cert. denied, 494 U.S. _________ ____________ 1005 (1990). Although a defendant is entitled to request an instruction on his or her theory of the case, United States v. Noone, ______________________ 913 F.2d 20, 30 (1st Cir. 1990), cert. denied, 111 S. Ct. 1686 (1991), ____________ a trial court's refusal to give it is reversible error only if "'the instruction (1) is substantively correct; (2) was not substantively covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense.'" United States v. Gibson, 726 F.2d 869, 874 (1st _________________________ Cir.)(quoting United States v. Grissom, 645 F.2d 461, 464 (5th Cir. ________________________ 1981)), cert. denied, 466 U.S. 960 (1984). ____________ The trial judge properly declined to instruct the jury in accord with request number 10. First, it is not accurate. The request implies that delivery of a signed but unrecorded deed is always sufficient to transfer ownership of the property. The cases appellant cites, however, hold only that an unrecorded deed may be effective and binding between the grantor and grantee, without 6 discussing the effect of such a transfer on third parties. See Buck ___ ____ v. Babcock, 36 Me. 491, 493 (1853); Lawry v. Williams, 13 Me. 281, 284 __________ _________________ (1836). Indeed, the recording statute cited by appellant clearly states that an unrecorded conveyance is not effective against any party except the grantor and those with actual notice. Me. Rev. Stat. Ann. tit. 33, 201 (West 1988). Neither the cases nor the statute support the broad concept of "ownership" advanced by appellant. Second, even if request number 10 accurately stated the law it was properly rejected because it is irrelevant to this case. The judge instructed, without objection, that record title is a form of ____________ property whether or not it represents full legal title to the ____________ property. Because record title is something of value, the intention to deprive another of such title by means of deception or misrepresentation of facts constitutes fraudulent intent. Timothy and Daniel indisputably held record title to the real estate at issue when defendant sought to obtain their forged signatures. Until Philip recovered and recorded the alleged return deeds they thus had rights in the real estate, enforceable against any third party. So long as those deeds remained unrecorded Timothy and Daniel had an interest in land of which they could be defrauded. Finally, the charge given was sufficient to frame the defendant's theory of the case for the jury. The court gave detailed and complete instructions regarding the good faith defense, defining "honest intention" and "good faith," and explaining that "good faith constitutes a complete defense to one charged with an offense of which fraudulent intent is an essential element." In sum, we find no error 7 in the trial court's failure to read defendant's requested instructions 9, 10, 11 and 12. Appellant next claims error in the admission of the testimony of former members of his office staff in the prosecution's rebuttal case. In particular, he objects to statements that they had observed appellant signing names other than his own to documents as well as witnessing and notarizing signatures without the signatory present; that he had asked them to perform similar acts and, in one instance, to back date a deed involving Daniel Spang. Although the government argues that appellant, by failing to make contemporaneous objection, has not preserved this issue for appeal, defense counsel did generally and timely object to the rebuttal evidence. Before the testimony was admitted the defense raised three objections: (1) because appellant admitted that he had sought to obtain "duplicate" signatures on deeds, the rebuttal testimony was irrelevant to any disputed fact; (2) the prejudicial effect of the evidence outweighed its probative value; and (3) rebuttal was improper because appellant had offered no character evidence. The conduct of a trial, including decisions whether to permit the introduction of rebuttal evidence, resides with the sound discretion of the trial judge. Borges v. Our Lady of the Sea Corp., 935 F.2d _____________________________________ 436, 442 (1st Cir. 1991). The record before us evinces no abuse of that discretion. "Rebuttal evidence may be introduced to explain, repel, contradict or disprove an adversary's proof." United States v. ________________ Laboy, 909 F.2d 581, 588 (1st Cir. 1990). Appellant testified that _____ his effort to procure unauthorized signatures was a "one time 8 occurrence." The proffered evidence thus directly contradicted the testimony of appellant himself. It was also highly relevant on the issue of appellant's intent and thus admissible under Rule 404(b). Fed. R. Evid. 404(b). Moreover, the trial court's careful weighing of the probative value and prejudicial effect of the evidence fully comported with Rule 403. Fed. R. Evid. 403. "By design, all evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided." United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st __________________________________ Cir. 1989). Finally, appellant asserts error in the Court's refusal to issue a curative instruction in response to a comment by the prosecutor during closing argument.*** The trial court has broad discretion to control the scope of closing arguments. United States v. Wilbur, _______________________ 545 F.2d 764, 767 (1st Cir. 1976). Having reviewed the record, we conclude that the Court below did not abuse its discretion in this instance. The comment was made in answer to the closing argument of the defense and fell properly within the scope of issues raised at trial. Therefore, neither the prosecutor's question during argument nor the Court's refusal to give a curative instruction provides grounds for reversal. The judgment of conviction is affirmed. ____________________ *** Referring to the testimony of one of appellant's former employees, the prosecutor asked, "[i]f that is sloppy practice, ladies and gentlemen, where does the line of criminal act begin?" 9