**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Cedric Orlando LEWIS, Defendant–**
**Appellant.**

**No. 93–5910.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 2, 1995.

Decided April 17, 1995.

Thomas Oliver Mucklow, Asst. U.S. Atty., Wheeling, WV, for appellee. **ON BRIEF:** William D. Wilmoth, U.S. Atty., Wheeling, WV, for appellee.

Before WIDENER and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Reversed by published opinion. Judge HAMILTON wrote the opinion, in which Judge WIDENER and Senior Judge CHAPMAN joined.

## OPINION

HAMILTON, Circuit Judge:

Cedric Lewis (Lewis) appeals his conviction for conspiracy to possess with intent to distribute and to distribute cocaine.[1] *See* 21 U.S.C.A. §§ 841(a)(1), 846 (West 1981 & Supp.1994). The district court sentenced him to a term of thirty-three months' imprisonment and five years supervised release. Lewis seeks a reversal of his conviction on several grounds, including the district court's failure to give his requested jury instruction requiring the jury to find him not guilty of conspiracy if it found he did not have an illegal agreement with anyone other than a government agent. For the reasons that follow, we reverse Lewis' conviction.

### I.

Lewis was born and raised in Barbados. He was trained as a horse racing jockey and was employed at the Charlestown Races, in Charlestown, West Virginia. In early 1992, Lewis was terminated from his employment with the Charlestown Races because he failed a mandatory drug screening test administered by his employer. At or about the same time, Lewis and his wife separated, and Lewis moved out of his home. Lewis then moved in with his friend, Richard Griffith (Griffith), who also worked at the Charlestown Races and was from Barbados.

**ARGUED:** Barry Philip Beck, Martin & Seibert, Martinsburg, WV, for appellant.

1. The indictment charges Lewis with conspiracy to "possess with intent to distribute and to distribute cocaine, also known as 'crack.' " (J.A. 8). The government's evidence supporting the charged conspiracy consisted of David McMasters delivering cocaine and cocaine base to Tracey Rouss, who was charged as a conspirator in the indictment. In their respective briefs, the parties appear to agree that the conspiracy involved cocaine and/or cocaine base and raise no issue regarding a possible variance between the indictment and the evidence. For purposes of clarity, we will refer to the charged conspiracy as one alleging a conspiracy to possess with intent to distribute and to distribute cocaine.

According to a friend of Griffith's named David McMasters (McMasters), approximately a week to ten days prior to May 15, 1992, Griffith informed him that Lewis was interested in exchanging his 1990 Hyundai automobile for cocaine.[2] Griffith denied this at trial and testified that all of the initial discussions regarding exchanging Lewis' car for cocaine occurred directly between McMasters and Lewis. Griffith and McMasters agreed, however, that McMasters allegedly knew some drug dealers in Arizona who were willing to exchange cocaine for Lewis' car and would pay them a commission of approximately two pounds of marijuana for arranging the exchange.[3]

Unbeknownst to either Griffith or Lewis at this time, McMasters was a government informant who was operating undercover as part of a plea agreement. The evidence established that McMasters and Griffith had been confederates in previous drug deals, some of which formed a basis for the charges that caused McMasters to enter into the plea agreement.

Approximately one week after the conversation between McMasters and Griffith concerning the exchange of Lewis' car-for-cocaine, Sergeant Steve Tucker of the West Virginia State Police placed a recording device on McMasters' telephone. Several conversations between Lewis and McMasters and Griffith and McMasters were taped. All of the tape recordings made by Tucker during the period of May 15–20, 1992, were introduced during the trial and played for the jury. The tape recordings contained conversations between Griffith and McMasters in which they discussed how Lewis would reinstate the insurance on his Hyundai and photograph it so that he would be able to collect the insurance money on the reported-stolen vehicle. A taped conversation on May 16, 1992, between McMasters and Griffith, revealed that McMasters informed Griffith that

he could obtain the cocaine from the "heat," (J.A. 108), i.e., the police, instead of drug dealers in Arizona, and in lieu of receiving two pounds of marijuana as a commission for setting up the exchange, Lewis would be arrested and no longer living with Griffith.[4] McMasters told Griffith that if they obtained the cocaine from the police and set up Lewis in this sting operation, Griffith would be totally exonerated.[5]

The tape recordings also revealed Lewis had actually rejected the car-for-cocaine exchange on several occasions. During one conversation on May 17, 1992, McMasters told Griffith to tell Lewis that he had to "get off of his ass and get it done." (J.A. 175). Griffith informed McMasters during a conversation on May 19, 1992, that Lewis had twice said "no" to the car-for-cocaine exchange. (J.A. 246–47). During this same conversation, Griffith related that he had admonished Lewis the night before to make up his mind one way or the other.

On May 18, 1992, Lewis drove to McMasters' residence to inspect the cocaine. The next day, on May 19, 1992, in preparation for the exchange, Lewis delivered his car to the parking lot of the apartment building where McMasters resided. Following McMasters' instructions, Lewis gave his keys to Griffith who was supposed to deliver them to McMasters.

On the morning of May 20, 1992, McMasters called Lewis and told him the cocaine was at his apartment and ready to be picked up. At this time, Lewis told McMasters he wanted the cocaine, but would wait for Griffith to get home before he came for it. Sergeant Tucker, who was present in McMasters' apartment during this conversation, instructed McMasters to "force" Lewis to make a decision. (J.A. 31). McMasters then told Lewis that he could not wait for Griffith

---

2. Lewis was behind on his car payments and the lienholder, Ford Motor Credit Company, was attempting to repossess the vehicle.

3. Furthermore, Lewis was supposed to reinstate the insurance on his Hyundai so he could report it stolen after the exchange and collect the insurance proceeds.

4. By this time, Griffith wanted Lewis out of his apartment for various reasons, including the fact that space was tight in the apartment.

5. The government conceded at oral argument that at this point, Griffith became a government agent.

to return home, and insisted Lewis come for the cocaine immediately.

After two telephone calls between Lewis and McMasters, Lewis sent Tracey Rouss (Rouss) to McMasters' apartment to get the cocaine. Rouss lived in an apartment next door to Griffith's apartment where Lewis was staying. According to Rouss, she never discussed any kind of drug deal with Lewis. Rouss testified she had agreed to pick up a package from McMasters only after Lewis assured her that it contained a pair of jockey's racing shoes. Rouss drove to McMasters' apartment and picked up a box from him, which she testified she believed contained racing shoes. McMasters testified he sat the box in Rouss' trunk, took a package of cocaine out of the box, showed the cocaine to Rouss, and then put the package of cocaine back in the box. McMasters testified further he told Rouss the package contained one ounce of cocaine and two ounces of cocaine base.[6] After the transaction, Rouss began driving her car away from McMasters' apartment. Before she left the apartment parking lot, she was stopped and arrested by officers of the West Virginia State Police.

On August 19, 1992, Lewis was charged in a three-count indictment. Count one charged that Lewis and Rouss conspired with each other and with others to possess with intent to distribute and to distribute cocaine from on or about May 1, 1992 to May 20, 1992. *See* 21 U.S.C.A. §§ 841(a)(1), 846 (West. 1981 & Supp.1994). Count two charged Lewis with using the telephone to facilitate the distribution of cocaine. *See* 21 U.S.C.A. § 843(b) (West 1981). Count three charged that Lewis and co-defendant Rouss aided and abetted each other in possessing with intent to distribute cocaine. *See* 21 U.S.C.A. § 841(a)(1) (West 1981) and 18 U.S.C.A. § 2 (West 1969).

Prior to trial, co-defendant Rouss entered into a plea agreement with the United States in which she agreed to plead guilty to a violation of West Virginia law in return for dismissal of the federal charges.

Lewis' case was tried before a jury. At trial, Lewis presented the affirmative defense of entrapment and requested an instruction, which the district court denied, requiring the jury to acquit him of the conspiracy count if it found he did not have an illegal agreement with anyone other than a government agent. The jury found Lewis guilty on the conspiracy count, but acquitted him of the two substantive counts. Lewis was sentenced to thirty-three months' imprisonment and five years supervised release. He filed a timely appeal.

## II.

Lewis contends the district court erred in refusing to give his proposed jury instruction, requiring the jury to acquit him of the conspiracy count if it found he did not have an illegal agreement with anyone other than a government agent, *i.e.*, McMasters and/or Griffith. Lewis' proposed instruction stated:

> The court instructs the jury that a defendant cannot conspire with a government agent. For purposes of this case, David McMasters and Richard Griffith were government agents. Therefore, if you find that Cedric Lewis did not have an agreement with anyone other than David McMasters and Richard Griffith, you must find him not guilty.

(J.A. 501).

A district court's refusal to provide an instruction requested by a defendant constitutes reversible error only if the instruction: "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Camejo*, 929 F.2d 610, 614 (11th Cir.), *cert. denied*, 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991).[7] *See also Unit-*

---

6. The evidence showed McMasters delivered 55.1 grams of cocaine and 23.7 grams of cocaine base to Rouss, but there was no evidence that Lewis had any negotiations with McMasters regarding a specific amount of cocaine that Lewis would receive in exchange for his car.

7. We impliedly approved this test in *United States v. Hamrick*, 43 F.3d 877, 885 (4th Cir. 1995) (*en banc*), when, without elaboration, we cited *Camejo* in our review of a defendant's challenge to the district court's refusal to give his proposed instruction.

*ed States v. Taylor,* 997 F.2d 1551, 1558 (D.C.Cir.1993); *United States v. Wood,* 982 F.2d 1, 3 (1st Cir.1992); *United States v. Phillips,* 959 F.2d 1187, 1191 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 497, 121 L.Ed.2d 434 (1992); *United States v. Neal,* 951 F.2d 630, 633 (5th Cir.1992); *United States v. Sassak,* 881 F.2d 276, 279 (6th Cir.1989); *United States v. Walker,* 720 F.2d 1527, 1541 (11th Cir.1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984).[8] With this test in mind, we turn to the facts of this case.

### A.

As the government conceded in its brief and during oral argument, Lewis' proffered instruction was a correct statement of the law. In *United States v. Hayes,* 775 F.2d 1279, 1283 (4th Cir.1985), we held a defendant cannot be convicted for conspiring with a government agent. *See also United States v. Chase,* 372 F.2d 453, 459 (4th Cir.), *cert. denied,* 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967). Accordingly, Lewis' instruction satisfied the first element in *Camejo.*

### B.

The parties dispute whether the content of Lewis' proposed instruction was otherwise covered by the district court's instructions to the jury. Lewis contends the government-agent instruction was not substantially covered by any of the district court's other instructions and specifically asserts that the general conspiracy instruction given by the district court wholly failed to mention Lewis could not be convicted for conspiring with a government agent. Conversely, the government contends the general conspiracy instruction adequately conveyed the jury's duty to acquit Lewis unless it found he had conspired with someone other than a government agent. The government reasons this duty was obvious from the general conspiracy instruction because it informed the jury that a person becomes a member of a con-

spiracy if he conspires with another to accomplish an unlawful purpose, and it had to be apparent to the jury that a government agent working undercover is not seeking to accomplish an unlawful purpose.

The district court gave the following general instruction regarding conspiracy:

A conspiracy is a combination of two (2) or more persons by concerted action *to accomplish some unlawful purpose.* So a conspiracy is a kind of a partnership in criminal purposes in which each member becomes the agent of every other member. *The gist of the offense is a combination or agreement to disobey or to disregard the law.* Mere similarity of conduct among the various persons and the fact that they may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy. However, the evidence in this case need not show that the members entered into any express or formal agreement or that they directly by words spoken or in writing stated between themselves what their object or purpose was to be or the details thereof of the means by which the object or purpose was to be accomplished. ·

What the evidence in the case must show beyond a reasonable doubt in order to establish proof that a conspiracy existed is that the *members in some way or manner or through some contrivance positively or tacitly came to a mutual understanding to try to accomplish a *common and unlawful plan.* The evidence in the case must establish beyond a reasonable doubt that the alleged conspiracy was knowingly formed, that one or more means or methods were agreed to be used in an effort to effect or accomplish some object or purpose of the conspiracy and that two (2) or more persons including the accused were knowingly a member of a conspiracy as charged in the indictment.

---

8. Of course, as a threshold for applying this test, a defendant must present an adequate evidentiary foundation supporting the instruction. Here, the government does not dispute that Lewis pre-

sented a proper evidentiary foundation supporting his instruction, *i.e.,* that McMasters and Griffith were government agents.

Before the jury can find that the defendant or any other person became a member of a conspiracy charged in count one (1) the evidence in the case must show beyond a reasonable doubt that the defendant knew the purpose or goal of the agreement or understanding and deliberately entered into the agreement intending in some way to accomplish the goal of the agreement or purpose of this common plan or joint action. The evidence must establish beyond a reasonable doubt that the defendant knowingly and deliberately entered into *an agreement to possess with intent to distribute and to distribute the cocaine.*

(J.A. 485-87).

This instruction does not inform the jury that Lewis could not be convicted for conspiring with a government agent. We are unpersuaded by the government's argument that the instruction implied Lewis could not be convicted for conspiring with a government agent simply by instructing that a person can only be a conspirator if he joined another to commit an unlawful act or accomplish an unlawful purpose. The government's implication argument assumes too much and misses the point.

The purpose of jury instructions is to instruct the jury clearly regarding the law to be applied in the case. *See United States v. Ribaste,* 905 F.2d 1140, 1143 (8th Cir.1990) ("The purpose of instructing the jury is to focus its attention on the essential trial issues in the case and inform it of the permissible ways in which these issues may be resolved."); *United States v. Assi,* 748 F.2d 62, 65 (2d Cir.1984) ("The purpose of jury instructions is to inform the jury clearly and succinctly of the role it is to play and the decisions it must make."). Without instructions as to the law, the jury becomes mired in a factual morass, unable to draw the appropriate legal conclusions based on those facts. In this case, the general instruction on conspiracy failed to instruct the jury clearly that it may not convict Lewis for conspiring with a government agent, *i.e.,* McMasters and/or Griffith. The government's argument fails because no basis exists to assume the jury *knew,* without being instructed: (1) McMasters and Griffith were operating as government agents and (2) as government agents they could not conspire to commit an unlawful act. In sum, the government has failed to make a credible argument that Lewis' government-agent instruction was substantially covered by the district court's other instructions to the jury. Accordingly, Lewis' instruction satisfied the second element in *Camejo.*

### C.

The parties also dispute whether Lewis' proposed instruction dealt with some point in the trial so important that failure to give the requested instruction seriously impaired Lewis' ability to conduct his defense. *See Camejo,* 929 F.2d at 614. Lewis contends that the district court's failure to give his government-agent instruction seriously impaired his ability to present an effective defense because, without the instruction, the jury could have convicted him of conspiring with McMasters and/or Griffith and not Rouss. *See United States v. Escobar de Bright,* 742 F.2d 1196, 1200-01 (9th Cir.1984) (reversing defendant's conviction for failure to give requested government-agent instruction, because there was some foundation to support the defendant's theory that she only conspired with a government agent, and without the instruction, the jury could have convicted the defendant of conspiracy even if it concluded she only had conspired with the government agent). Lewis reasons the district court's failure to give his proposed instruction seriously impaired his ability to present his defense, because the evidence showing he allegedly "conspired" with Rouss was slight, whereas the evidence that he allegedly "conspired" with McMasters and/or Griffith to exchange his car for cocaine was substantial, thereby creating the high probability that the jury convicted him of conspiring with one or both of the government agents and not Rouss.

The government contends that the district court's failure to give the instruction did not seriously impair Lewis' ability to present his defense, because Lewis was free to argue this point to the jury in closing, if he chose. The government cites no case law to support

this contention; a contention that assumes a defendant may be denied an otherwise proper instruction on the theory of his defense because he may argue that theory in closing argument.

We believe the district court's failure to give Lewis' proposed government-agent instruction seriously impaired Lewis' ability to present his defense. In this case, there is a strong possibility the jury convicted Lewis of conspiring with McMasters and/or Griffith and not Rouss. The evidence of Rouss' knowledge of the purpose of the conspiracy was conflicting, with Rouss denying she knew the box contained cocaine until after her arrest, and McMasters testifying he showed Rouss the cocaine and told her how much it weighed. This fact, coupled with the fact that the bulk of the evidence of the car-for-cocaine exchange consisted of numerous telephone conversations between McMasters and Griffith making arrangements for the exchange, created the strong possibility the jury convicted Lewis of conspiring with McMasters and/or Griffith and not Rouss. It is irrelevant that the jury could have convicted Lewis of conspiring with Rouss, because without giving Lewis' proposed government-agent instruction, the strong possibility remains that the jury convicted Lewis of conspiring with McMasters and/or Griffith and not Rouss. Thus, for Lewis to present his theory of defense, it was incumbent on the district court to instruct the jury that Lewis could not be convicted of conspiring with a government agent. In sum, we have no doubt the district court's failure to give Lewis' proposed government-agent instruction seriously impaired Lewis' ability to present his defense. Accordingly, Lewis' instruction satisfied the third element in *Camejo*. *See Escobar de Bright*, 742 F.2d at 1200–01.

### III.

Next, we address the government's contention that the district court's failure to give Lewis' proposed instruction, if error, was harmless error. *See* Fed.R.Crim.P. 52(a). It is unclear whether this type error is ever subject to harmless error analysis. The Ninth Circuit has held this type error can never be harmless. *See Escobar de Bright*, 742 F.2d at 1201–02. It appears the District of Columbia Circuit has subsumed a harmless error analysis into the third element of the test set forth and analyzed in section II above. *See United States v. Smith*, 41 F.3d 1565, 1568 (D.C.Cir.1994). We have never addressed whether this type error is subject to harmless error analysis.

Initially, we note that it would be anomalous to conclude that a district court's failure to give a defendant's proposed instruction which substantially impaired his ability to present his defense can be harmless. We need not decide, however, whether the failure to give Lewis' proposed government-agent instruction is subject to harmless error analysis, because, even applying a harmless error analysis, as the government urges us to do, the error was not harmless. As we discussed in section II.C., the two principal players in arranging the car-for-cocaine exchange were government agents, and without Lewis' proposed government-agent instruction, the likelihood the jury convicted Lewis of conspiring with either or both of them was substantially significant. Under these circumstances it strains credulity to conclude the error was harmless, even if a harmless error analysis should be applied.

### IV.

 For the above reasons, Lewis' conspiracy conviction is reversed.[9]

*REVERSED.*

---

9. To aid the district court in the event of retrial, we will briefly address three of Lewis' other grounds for appeal: (1) the government engaged in outrageous conduct in its handling of the sting operation, (2) the district court erred in refusing to admit excerpts from transcripts of several of the tape recorded conversations heard by the jury, which Lewis contends would have aided the presentation of his entrapment defense, and (3) his Fifth Amendment right against self incrimina-

tion was violated when the district court ordered him to undergo a psychological examination before trial pursuant to Fed.R.Crim.P. 12.2(c). First, we find no merit in Lewis' outrageous government conduct ground, because the facts surrounding this ground relate to counts two and three of the indictment, both of which Lewis was acquitted. Second, we find no merit to Lewis' excerpts from transcripts argument in light of the time constraints placed on the district court and the noted errors in the transcripts. Finally, we find no error in the district court's order that Lewis undergo a psychological examination before trial pursuant to Fed.R.Crim.P. 12.2(c), in light of Lewis' notice to the government, pursuant to Fed.R.Crim.P. 12.2(b), that, as a part of his entrapment defense, he intended to rely on expert testimony to show he had a sub-normal level of intelligence.