**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-4006**

---

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

DOROTHY MARIE JACKSON, a/k/a Dorothy Winston,

                              Defendant - Appellant.

---

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Peter J. Messitte, District Judge.  (CR-
02-478-PJM)

---

Submitted:  February 8, 2006        Decided:  February 22, 2006

---

Before MICHAEL, TRAXLER, and DUNCAN, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished
per curiam opinion.

---

Fred Warren Bennett, Gary E. Bair, BENNETT & BAIR, L.L.P.,
Greenbelt, Maryland, for Appellant.  Allen F. Loucks, United States
Attorney, Deborah A. Johnston, Assistant United States Attorney,
Bryan E. Foreman, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

A jury convicted Dorothy Marie Jackson on all counts of an indictment charging her with (among other things) participating in a conspiracy to distribute prescription painkillers. The district court sentenced her to a 200-month prison term. Jackson appeals, challenging the conspiracy conviction and her sentence. We affirm the conviction, but vacate the sentence and remand for resentencing consistent with United States v. Booker, 543 U.S. 220 (2005).

I.

A.

In June 2004 a grand jury in the District of Maryland handed down a third superseding indictment against Jackson. Count One of the 15-count indictment charged that Jackson, "together with" her brother (Rodney), Emmanuel Thad Ereme, and others, "did knowingly, intentionally and unlawfully combine, conspire, confederate and agree together to distribute and possess with intent to distribute" oxycodone and Oxycontin, two Schedule II controlled substances. J.A. 18; 21 U.S.C. § 846. The indictment's other counts charged instances of possession with intent to distribute controlled substances and acquisition of controlled substances by fraud. Jackson pleaded not guilty and went to trial.

2

The jury returned a guilty verdict on all counts, and we therefore state the evidence in the light most favorable to the government. Jackson and her brother Rodney worked for a doctor in an office building in Temple Hills, Maryland. Located in the same building was the office of Dr. Cyrus Nemati. Sometime in 1998 or 1999 Rodney approached Cora Moran, who was employed as Dr. Nemati's office manager, seeking Moran's cooperation in a scheme to obtain access to prescription drugs. Eventually Moran agreed to sell Dr. Nemati's blank prescription forms to Jackson and Rodney for $30 per form.

Moran sometimes gave Jackson and Rodney the forms when they visited the office; at other times, she delivered them to Jackson's home. Moran learned from Jackson and Rodney that they usually wrote prescriptions for the painkiller Percocet on the forms and that they then sold the prescriptions to buyers for about $300 per prescription. (Percocet is the brand name of a chemical combination of oxycodone (a Schedule II controlled substance available only by prescription, see 21 U.S.C. § 829(a)) and acetaminophen. The generic name of Percocet is Roxicet. The brand name of oxycodone in time-release form is Oxycontin.

Jackson sold the Percocet to buyers such as David Zubres who came to her home. Zubres testified that when he did not have money to pay, Jackson let him earn some of the drug by carrying multiple Percocet prescriptions into a pharmacy to be filled. For

3

this purpose Jackson sent Zubres to one pharmacy only: the Hremt Pharmacy, owned and operated by Ereme, a licensed pharmacist. Zubres expressed worries to Jackson about presenting numerous prescriptions to be filled at a single time. But Jackson assured him that service at the Hremt Pharmacy "won't be any problem, shouldn't be any problem," and that the pharmacy would likely assume Zubres was merely a courier delivering the filled prescriptions to bed-ridden people who could not go to the pharmacy themselves.

A woman who at the time worked as a pharmacy technician at Hremt Pharmacy, Roselyn Odom-Fauntleroy, noticed that patients were bringing in prescriptions from Dr. Nemati for Percocet and Oxycontin "in groups," which was unusual. Ereme told her not to worry about these prescriptions, assured her that their authenticity had already been verified, and instructed her to fill them.

In 1999 the U.S. Drug Enforcement Agency began investigating the Hremt Pharmacy. Drug enforcement agents executing a search warrant at the pharmacy in November 2000 and in March 2002 retrieved 687 prescriptions on forms from Dr. Nemati. A document examiner from the U.S. Secret Service concluded that Jackson probably filled out the patient information for 651 of the forms in the name of 66 different patients. A drug enforcement

4

agent testified that the prescriptions were for a total of 48,035 pills of drugs, including Oxycontin, that contained oxycodone.

B.

At the close of the government's case-in-chief, Jackson moved for judgment of acquittal. She contended that no direct evidence connected Jackson to Ereme, contrary to the allegation in the conspiracy count. The district court denied the motion. After instructing the jury on the law to be applied (including the law concerning a single conspiracy), the district court asked whether the parties had any suggested corrections or identified any omissions. The government and Jackson said they had neither. At the conclusion of closing arguments, however, defense counsel sought an instruction on multiple conspiracies on the asserted ground that the government had "charged a different conspiracy in the indictment." J.A. 540. The district court denied the request.

The jury found Jackson guilty on all counts. The jury specifically found that the conspiracy involved 135 grams of Oxycontin pills and 25,527.6 grams of pills containing oxycodone. The district court then convened the jury to make special findings for sentencing. The jury found that Jackson had not been "a leader or organizer in criminal activity which involved five or more participants or was otherwise extensive," USSG § 3B1.1(a), but that

5

she had been a "manager or supervisor" in such activity, USSG § 3B1.1(b). J.A. 578.

At sentencing the government agreed that the Guidelines required focusing not on the total weight of the pills but on the weight of the active ingredient oxycodone in those pills, generating a base offense level of 32. Notwithstanding the jury's determination, the government sought a judicial finding that Jackson had been a USSG § 3B1.1(a) "leader or organizer," requiring a four-level increase in Jackson's offense level to 36, and the district court agreed. The district court then declined Jackson's request for a downward departure based on her medical condition and responsibility for the care of a disabled son.

With a criminal history category of I and offense level of 36, the Guidelines sentence range for Jackson was 188 to 235 months. (Had Jackson's base offense level been increased by only three levels under the jury's "manager or supervisor" finding, the range would have been 168 to 210 months.). The district court sentenced Jackson to 188 months on the conspiracy count and an additional 12 months on Count Two (acquisition of a controlled substance by fraud, 21 U.S.C. § 843(a)(3)), with sentences on all other counts to run concurrently.

II.

On appeal Jackson challenges her conviction on the conspiracy count. She argues that the government failed to present evidence at trial connecting Jackson to Ereme, even though the indictment alleged a conspiracy between Ereme, Jackson, and Rodney. Jackson contends that this is a contradiction presenting grounds for either (a) reversing her conviction because the evidence presented at trial constructively amended the indictment, or (b) ordering a new trial because the district court did not give the multiple conspiracy instruction Jackson sought.

A.

Jackson first alleges that the evidence at trial constructively amended the indictment. The Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V. "When the government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment . . . occurs." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). "[A] constructive amendment violates the Fifth Amendment right to be indicted by a grand jury, is error per se, and must be corrected on appeal even

7

when the defendant did not preserve the issue by objection." <u>Id.</u> In contrast, "[w]hen different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs. A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." <u>Id.</u> (citations omitted).

We must ascertain whether Jackson faced a constructive amendment or a mere variance, of course, <u>only</u> if there was a divergence between the evidence presented at trial and the grand jury's indictment. Jackson presupposes that when an indictment alleges the existence of a single conspiracy between multiple defendants, if <u>direct</u> trial evidence does not show express agreement between all of the defendants, then there must be multiple conspiracies at work and hence a constructive amendment.

This presupposition is mistaken. To prove a single conspiracy under 21 U.S.C. § 846, the government must prove an agreement to violate a federal drug law, the defendant's knowledge of the conspiracy, and the defendant's willing participation. <u>United States v. Strickland</u>, 245 F.3d 368, 384-85 (4th Cir. 2001). "By its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement." <u>United States v. Burgos</u>, 94 F.3d 849, 857 (4th Cir.

8

1996) (en banc). "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a development and a collocation of circumstances." Glasser v. United States, 315 U.S. 60, 80 (1942) (punctuation omitted).

Here, the government introduced ample evidence from which the jury could infer that Jackson and Ereme were co-conspirators even though there was no evidence of a meeting or communication between them. Moran testified that Jackson used Dr. Nemati's prescription forms; Zubres testified that Jackson repeatedly sent him with batches of prescription forms to the Hremt Pharmacy; Odom-Fauntleroy testified that Ereme instructed her not to worry about verifying the unusually grouped prescriptions coming in on Dr. Nemati's forms.

The jury could reasonably have inferred from this "collocation of circumstances" that Jackson was guilty beyond a reasonable doubt of a single conspiracy, namely, the very conspiracy alleged in the indictment. The trial evidence did not differ from the indictment's allegations. We conclude that the district court correctly denied Jackson's motion for judgment of acquittal and that Jackson's allegation of a constructive amendment is not supported by the facts or the law.

B.

Jackson next contends that she was entitled to a jury instruction on the law of multiple conspiracies. "The standard of review for determining whether the district court should have given a jury instruction is abuse of discretion." United States v. Ruhe, 191 F.3d 376, 384 (4th Cir. 1999). "A district court's refusal to provide an instruction requested by a defendant constitutes reversible error only if the instruction: (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995) (punctuation omitted).

Our standard for measuring the need for a multiple conspiracy instruction is well established. Such an instruction "is not required unless the proof at trial demonstrates that appellants were involved only in separate conspiracies unrelated to the overall conspiracy charged in the indictment." United States v. Squillacote, 221 F.3d 542, 574 (4th Cir. 2000). "A single conspiracy exists where there is one overall agreement, or one general business venture. Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." Id.

10

Here, as we have already explained, there was on the one hand substantial evidence supporting the jury's finding that Jackson was culpable in the single conspiracy alleged in the grand jury indictment.  On the other hand, Jackson fails to identify any evidence in the record that would support the existence of any conspiracies not related to the one charged in the indictment.  Accordingly, there was no demonstrated basis for giving a multiple conspiracy instruction, and the district court's decision not to give the instruction was within its discretion.

## III.

Finally, Jackson alleges that her sentence contravened Booker.  Under Booker there are two types of sentencing errors.  First, "a sentencing court commits Sixth Amendment error if it enhances a sentence beyond the maximum authorized by facts found by a jury beyond a reasonable doubt or admitted by the defendant." United States v. Rodriguez, 433 F.3d 411 (4th Cir. 2006).  This is because the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. Const. amend. VI.  Second, "[a] court commits statutory error if it treats the Guidelines as mandatory, rather than as advisory." Rodriguez, 433 F.3d at 414.

11

Jackson claims that when the district court relied on its own finding that Jackson was a USSG § 3B1.1(a) "leader or organizer" (and not, as the jury found, a USSG § 3B1.1(b) "manager or supervisor"), the district court committed constitutional <u>Booker</u> error because it increased her base offense level by one level more than was allowed under the jury-found facts. This argument misconstrues <u>Booker</u>'s constitutional analysis, which focuses on the actual sentence imposed, not on the offense level used in computing the Guidelines sentence. See <u>United States v. Hughes</u>, 401 F.3d 540, 547 (4th Cir. 2005) ("In <u>Booker</u>, the Court ruled that a <u>sentence</u> exceeding the maximum allowed based only on the facts found by the jury violates the Sixth Amendment.") (emphasis added). Here, on the facts found by the jury, Jackson was eligible for a sentence on the conspiracy count of 168 to 210 months. The actual sentence imposed was 188 months for the conspiracy count. Jackson's sentence, in other words, fell short of the 210-month maximum that the district court could have imposed based solely upon the jury's determinations. Thus, there was no constitutional <u>Booker</u> error.

Jackson also contends that the district court committed statutory <u>Booker</u> error by treating the Sentencing Guidelines as mandatory, not advisory. She made her objection to the sentencing proceedings known to the district court by citing <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). This objection "plainly notified

12

the court of [her] position that [she] was being sentenced illegally, and [she] identified the line of Supreme Court precedent upon which [she] now relies." Rodriguez, 433 F.3d at 416. Consequently, we review the claim for harmless error, under which the burden is on the government "to show that such an error did not affect the defendant's substantial rights." Id. Thus, it is not Jackson's burden to establish that but for the district court's mandatory application of the Guidelines, she would have received a more lenient sentence. The district court's silence on how it would apply the factors in 18 U.S.C. § 3553(a) in ascertaining a proper sentence for Jackson must be construed in Jackson's favor. Id. Because the government has not satisfied its burden to show that the error was harmless, Jackson is entitled to be resentenced.

## IV.

For the foregoing reasons, we affirm Jackson's conviction but vacate her sentence and remand for resentencing. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not aid the decisional process.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

13