**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-5153**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BERTRAND ANDER MILES,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, District Judge. (3:07-cr-00214-HEH-1)

Argued: December 5, 2008          Decided: March 25, 2009

Before WILLIAMS, Chief Judge, and WILKINSON and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Robert James Wagner, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury in the Eastern District of Virginia convicted Bertrand Ander Miles of manufacturing and conspiring to manufacture more than one-hundred marijuana plants, and of maintaining a place for the distribution, storage, or use of marijuana. Miles appeals his conviction. For the reasons that follow, we affirm.

I.

This case began with a DEA task force investigation of a hydroponics[1] store in Richmond, Virginia. Officers performed a "trash pull" of the store's garbage and discovered credit card receipts of purchases made by Miles from November 2006 to January 2007. As a result of the investigation, the task force obtained and executed a search warrant on Miles' property in May 2007. Robert Nelson, Miles' landlord and housemate, owned the house, shed, and land searched. Miles rented the upstairs section of Nelson's home.

Miles began growing and smoking marijuana to treat his cluster headaches. Nelson agreed to allow Miles to use the shed

---

[1] "Hydroponics" is "[t]he cultivation of plants by placing the roots in liquid nutrient solutions rather than in soil; soilless growth of plants." Webster's Unabridged Dictionary 938 (2d ed. 2001)

on the property to grow marijuana as long as it was for Miles' personal use.  Further, Nelson helped Miles move his hydroponic equipment to the shed and even equipped the shed with air-conditioning and an exhaust vent.

When police searched the house and property, they found evidence of marijuana manufacturing.  Police found hydroponic growing apparatus and marijuana growing under grow lights in an upstairs closet.  Officers also found a scale and a smoking device.  Additional marijuana and growing equipment were found in the shed.

The precise number of marijuana plants seized was highly contested at trial.  The Government counted sixty-three plants: twenty-nine in the upstairs closet, twenty-five in the shed, and nine clones under a "cloning dome" in the shed.  Miles conceded that the jury could have counted thirty-four seized mature plants with fully functioning root balls.  But, Miles argued that the rest of the seized materials were at most cuttings or cloning attempts, and that the Government did not provide evidence that his growing attempts "had taken root and started growing."  (Pet'r Br. 7.)  Officer Phillip Johnakin, who participated in the search and did the counting, testified that successful clones may take seven to ten days before they start growing roots.  In his written report, the officer did not indicate that all of the cuttings had root systems, although at

3

trial he testified that he remembered all of the cuttings having roots.

At trial, the Government presented the testimony of three "jailhouse informants," who claimed that Miles bragged about his success and expertise at growing marijuana. One of these witnesses, Anthony Harrelson, testified that Miles claimed to have grown more than one-hundred marijuana plants.

Ultimately, the jury found Miles guilty on three counts: Count One, conspiracy to manufacture more than one-hundred marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) (2006), 841(b)(1)(B) (2006), and 846 (2006); Count Two, manufacturing and possessing with intent to distribute more than one-hundred marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1)(2) (2006), 841(b)(1)(B) (2006); and Count Three, maintaining a place for the distribution, storage, or use of marijuana, in violation of 21 U.S.C. § 856(a)(2) (2006). The court granted Miles' motion for judgment of acquittal on Count Four—possession of a firearm by an unlawful user of controlled substances, in violation of 18 U.S.C. § 922(g)(3) (2006)—because the Government failed to prove the firearm recovered was operable.

The district court sentenced Miles to concurrent mandatory minimum sentences of sixty months on Counts One and Two. Additionally, the court sentenced Miles to twenty-seven months on Count Three to run concurrently with Counts One and Two. The

court imposed a five-year term of supervised release and a forfeiture order in the amount of $20,000. Miles timely appeals his conviction.

## II.

## A.

The first issue before this Court is whether the jury was presented with sufficient evidence to support its finding that Miles manufactured and conspired to manufacture more than one-hundred marijuana plants. Miles has not demonstrated that the evidence, when viewed in the light most favorable to the Government, was insufficient on these counts.

This Court has found that a jury verdict must be sustained "'if there is substantial evidence, taking the view most favorable to the Government, to support it.' This is the familiar standard for review of a defendant's claim that the evidence is insufficient to sustain the jury's verdict of guilty." United States v. Steed, 674 F.2d 284, 286 (4th Cir. 1982) (citing Glasser v. United States, 315 U.S. 60, 80 (1942), overruled on other grounds). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996)(en banc).

Miles argues that one-hundred marijuana plants should not be attributed to him because the evidence to support that amount is not credible. Officer Johnakin testified that he personally counted sixty-three of Miles' marijuana plants and that each plant had roots. We must credit this testimony over Miles' mere assertion that the officer conveniently added this information on the stand. Harrelson testified that Miles claimed to have raised "at least well over 100" (J.A. 180) marijuana plants. Although the only testimony that brought the number of plants from sixty-three to one-hundred was the testimony of Harrelson, a jailhouse informant, the evidence when viewed in the light most favorable to the Government is sufficient to support Miles' conviction. Miles acknowledges that this Court does not ordinarily reweigh the district court's credibility findings. (Pet'r. Br. 16-17.) We find no reason to establish a new rule here.

B.

Next, whether jury instructions were properly given is a question of law to be reviewed de novo. United States v. Stitt, 250 F.3d 878, 888 (4th Cir. 2001) (citing United States v. Morrison, 991 F.2d 112, 115 (4th Cir. 1993)). However, a district court's decision concerning which instructions to give is reviewed for abuse of discretion. United States v. Abbas, 74 F.3d 506, 513 (4th Cir. 1996). Furthermore, a district court's

6

refusal to give a proposed instruction is reversible error only if the omitted instruction was correct, not substantially covered by the court's actual instruction, and so important to an issue in the trial that the failure to give the instruction seriously impaired the defendant's defense. United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995).

Miles contends that the district court erred in rejecting his proposed jury instruction. Specifically, counsel proposed a definition instruction to read, "A marijuana 'plant' is an organism having leaves and a readily observable root formation, which would include roots, a rootball, or root hairs." (J.A. 16.) The language for this proposed instruction came from the U.S. Sentencing Guidelines Manual. See U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.17 (2008).

Miles argues that without his instruction the jury was without guidance and may have mistakenly thought that "a mere leaf or stem or seed constituted a 'plant.'" (Pet'r Br. 21.) Moreover, he argues that this Court has no way of knowing that the jury did not employ this incorrect analysis. Miles further argues that although Officer Johnakin testified that root formation was a requisite for his characterization of a marijuana plant, the jury was never informed of why this was important. Thus, Miles contends that the court's failure to

give his instruction seriously impaired his ability to present an adequate defense.

The district court's reason for rejecting Miles' proposed instruction was that jurors did not have to be botanists to count plants. (J.A. 296.) However, Miles maintains that there is a vitally important distinction between what a layperson would deem a plant and what is considered a marijuana plant for the purposes of the Sentencing Guidelines. In essence, Miles argues, counting is not the problem; the problem is knowing what to count.

In order to evaluate a district court's refusal to give a proposed instruction we apply the Lewis test, which is composed of a three-part analysis: 1) whether the instruction was correct; 2) not substantially covered by the court's actual instruction; and 3) so important to an issue in the trial that the failure to give an instruction seriously impaired the defendant's defense. Lewis, 53 F.3d at 32. The Government admits that Miles satisfied the second prong of the Lewis test, as no part of the jury instructions addressed the meaning of the term "marijuana plant." Thus, the issues in dispute are whether the proposed instruction was correct and whether it was necessary.

The Supreme Court has held that federal drug statutes need not be interpreted through the lens of the advisory Federal Sentencing Guidelines.  See, e.g., Kimbrough v. United States, 128 S. Ct 558, 570-72 (2007) (finding that the Sentencing Guidelines were not meant to modify relevant law and noting that "[w]e do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply.") (quoting Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 341 (2005)); Neal v. United States, 516 U.S. 284 (1996).  When the Supreme Court interpreted Neal in Kimbrough it stated that the United States Sentencing Commission "had not purported to interpret the statute and could not in any event overrule our [prior case law]."  Kimbrough, 128 S. Ct. at 571-572 (citing Neal, 516 U.S. at 287).  Miles has offered no reason to read an application note in the United States Sentencing Guidelines as modifying or defining the plain language of a federal drug statute.

Under 21 U.S.C. § 802(16) (2006), Congress defined marijuana (or "marihuana") as it is used in 21 U.S.C. § 841(b) (2006).  Marijuana is considered "all parts of the plant Cannabis sativa L.," including seeds.  21 U.S.C. § 802(16).  Congress gave no separate definition for a "marijuana plant"; instead it gave the courts a clear unambiguous definition.

There is no case law or statutory authority to support Miles' contention that a jury instruction, derived from a comment in the Sentencing Guidelines, which requires a plant to have a root system in order to be considered a "marijuana plant," is correct.

ii.

Assuming arguendo, that the instruction was correct, the record reflects that the instruction was not necessary for Miles' defense. The Government never refuted Miles' definition of a marijuana plant. Miles' claimed the court needed to clarify for the jury that a marijuana plant has a root system. However, the Government's key witness, Officer Johnakin, clearly stated that each plant he counted had a root system.

Since Officer Johnakin claimed that all sixty-three plants that he counted had root balls, the jury only had to decide whether they believed him, and if so, whether Miles had manufactured and possessed over one-hundred plants. Harrelson testified that Miles took pride in growing marijuana (J.A. 179); certainly, someone with Miles' level of expertise would know how to distinguish a marijuana plant from a clone. Therefore, it would have been reasonable for the jury to conclude that if sixty-three of the marijuana plants had root systems, then the remaining thirty-seven that Miles told Harrelson he had grown also had root systems. The district court correctly found that

10

the jury was merely charged with the task of deciding if they believed Officer Johnakin and Harrelson, not deciding what a marijuana plant is. Therefore, the instruction was not necessary.

## C.

Finally, we address the issue of the district court's forfeiture order. This Court reviews factual findings for clear error and legal determinations de novo. See United States v. Leftenant, 341 F.3d 338, 342 (4th Cir. 2003). Because Miles did not raise the forfeiture issue with the district court, our review is for plain error. See United States v. Olano, 507 U.S. 725, 732-37 (1993).

Miles argues, "If the Court vacates or reverses Miles's convictions, it must also vacate the district court's forfeiture order based on those convictions as a 'necessary consequence.'" (Pet'r Br. 24. (quoting United States v. Wittig, 525 F. Supp. 2d 1281, 1287 (D. Kan. 2007), rev'd on other grounds).) Because Miles has not established a reason to reverse or vacate his convictions, we must evaluate his other arguments in support of vacating the forfeiture order.

First, Miles argues that the forfeiture order lacks a sufficient factual basis. See Libretti v. United States, 516 U.S. 29, 44 (1995) (requiring a "factual nexus" between the amount ordered forfeited and proceeds of crime). To support his

11

argument, Miles emphasizes the evidence in the record that he sold very little marijuana, and involved outsiders only "if he had any extra." (J.A. 76, 117.) Miles argues that when the Court considers the following facts it must determine that the forfeiture order was unconstitutional: 1) he was often "dry" (J.A. 118) or without harvest; 2) there were breaks in his growing process; 3) Nelson saw Miles sell marijuana only twice in a year; and 4) Miles smoked a large amount personally.

Additionally, at trial the Government put Sergeant Preuss, a DEA task force officer, on the stand. Miles challenges Sergeant Preuss' suggestion that his marijuana was worth $3,200 per pound ($800 per quarter pound). He argues that there was evidence at trial that he sold marijuana for $50 per quarter pound, even though he believed that he could probably get as much as $120 per quarter pound. Miles contends that the Government offered no support for its contention that the marijuana was worth sixteen times what he actually received for it during his sales.

As counsel for the Government pointed out during oral argument, one of Miles' prison-mates, Christian Shoolroy, testified that in his experience one marijuana plant yielded one-half of an ounce to an ounce of marijuana. Shoolroy also testified that Miles stated that he consumed a quarter ounce every two to four weeks. If we assume Miles produced the low

12

end of Shoolroy's estimate then we can assume that the sixty-three plants recovered from Miles yielded thirty-one and a half ounces of marijuana. If we assume that Miles smoked a quarter ounce of marijuana every week during the three-month growth season during which the sixty-three plants were produced—even more than Shoolroy's highest estimate, which would be Miles' best support for his theory that the marijuana was for his personal use and not for sale—then we would find that Miles smoked about three ounces during the three months. Therefore, even when we assume Miles smoked more than what is documented in the record, only about ten percent of his harvest could ever have conceivably been allocated for personal use. Even though there was limited evidence of Miles' drug sales, the district court correctly discerned from the facts that Miles produced significantly more marijuana than he could have consumed. These calculations coupled with evidence of Miles' prior sales provided a sufficient factual nexus for the forfeiture order.

Once the jury found that Miles was guilty of manufacturing one-hundred marijuana plants, the district court relied on the number one hundred and converted it into grams using the conversion rate of one-hundred grams per plant found in U.S.S.G. § 2D1.1. The district court then relied on the testimony of

Sergeant Preuss and multiplied $3,200 by 21.9 pounds[2] reaching a value of $70,080. The district court then decided to attribute Miles with $20,000, less than thirty percent of the overall calculated amount. Miles argues that there was no factual nexus between the forfeiture order and the facts of the record. Given that there was a sufficient basis to attribute Miles with ninety percent of the marijuana produced, after subtracting the high estimate of ten percent for personal use, it appears that the district court's forfeiture amount was generous.[3] Miles has not demonstrated error, let alone plain error.[4]

Miles cannot overcome the steep burdens of review applicable to the claims he asserts. Therefore, the decision of the district court is affirmed.

AFFIRMED

_____

[2] 100 plants = 10,000 grams = 22.05 pounds

[3] Using Preuss' rate and attributing Miles with ninety percent of the marijuana he produced, would have justified a forfeiture of $63,000.

[4] The Government suggests that an excessiveness challenge can never be mounted against a criminal forfeiture pursuant to 21 U.S.C. § 853(a)(1). This argument has been plainly rejected. See United States v. Bajakajian, 524 U.S. 321, 338-39 (1998); United States v. Ahmad, 213 F.3d 805, 814 (4th Cir. 2000). However, we need not address this issue further because Miles' arguments are unavailing on other grounds.